**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN FORRETT,<br><br>   Plaintiff,<br><br>  v.<br><br>GOURMET NUT INC,<br><br>   Defendant. | Case No.  22-cv-02045-BLF<br><br>**ORDER DENYING IN PART AND GRANTING IN PART WITHOUT LEAVE TO AMEND MOTION TO DISMISS**<br><br>[Re:  ECF No. 41] |

In this case, Plaintiff John Forrett challenges representations made on a product sold by Defendant Gourmet Nut, Inc. ("Gourmet Nut").  Forrett claims that Gourmet Nut has engaged in deceptive, misleading, and unlawful practices in marketing its Protein Packed Trail Mix.  He brings one common law claim and three California consumer protection claims and seeks to represent a California class of consumers who purchased the Product within the statute of limitations period.

Now before the Court is Gourmet Nut's motion to dismiss the First Amended Complaint. ECF No. 41 ("MTD"); *see also* ECF No. 43 ("Reply").  Forrett opposes the motion.  ECF No. 42 ("Opp.").  The Court held a hearing on the motion on April 27, 2023.  *See* ECF No. 45.  For the reasons discussed on the record and explained below, the Court DENIES IN PART and GRANTS IN PART WITHOUT LEAVE TO AMEND the motion to dismiss.

**I.   BACKGROUND**

As alleged in the First Amended Complaint, Defendant Gourmet Nut manufactures, markets, and sells a product called Protein Packed Trail Mix ("Product") in physical and e-commerce stores in the United States.  ECF No. 34 ("FAC") ¶¶ 1-2.  Forrett asserts that Gourmet Nut engages in "deceptive, misleading, and unlawful" marketing and sales practices with regard to

the Product. *Id.* ¶ 1. The front of the packaging allegedly states the product is "PROTEIN PACKED." *Id.* ¶¶ 26-27. The back of the packaging allegedly also includes the "PROTEIN PACKED TRAIL MIX" title, followed by a paragraph about "the importance of protein":

> Protein is an essential part of muscle tissue formation, strengthens the immune system, and keeps you fuller longer. Made from only the finest, quality ingredients, our Protein Packed Trail Mix makes a great pre- or post- workout snack as well as a delicious part of a daily "weight smart" diet.

*Id.* ¶¶ 26, 28. Finally, the Nutrition Facts panel indicates that there are seven grams of protein per serving, but it does not include the Percent Daily Value ("PDV") for protein. *Id.* ¶¶ 25-26, 29.

Forrett alleges that a reasonable consumer would be misled by the fact that there are protein claims on the package but no Percent Daily Value. FAC ¶ 11. Plaintiff emphasizes the distinction between protein quantity and quality. *See id.* ¶¶ 31-40. He alleges that the Protein Digestibility Corrected Amino Acid Score ("PDCAAS") is the FDA-mandated measure of protein quality. *Id.* ¶ 37. He further alleges that the FDA requires that this score be incorporated into the PDV on the Nutrition Facts Panel in certain circumstances. *Id.* ¶ 9. Plaintiff alleges that Gourmet Nut's omission of the PDV for protein allows it to "mislead and deceive consumers that the Products are excellent sources of protein," despite the types of proteins in the product being "incomplete proteins." *Id.* ¶¶ 44, 54.

In June 2020, Forrett purchased the Product at a Walmart store in San Jose, California. FAC ¶ 14. He relied on the "Protein Packed" representations made on the packaging and the "health-emphasis paragraph" on the back of the packaging in purchasing the Product. *Id.*

This lawsuit was filed on March 30, 2022. *See* ECF No. 1. Gourmet Nut filed a motion to dismiss the Complaint, which the Court granted with leave to amend in part and without leave to amend in part. *See Forrett v. Gourmet Nut, Inc.*, No. 22-cv-02045-BLF, 2022 WL 6768217 (N.D. Cal. Oct. 11, 2022). The First Amended Complaint asserts claims for (1) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, FAC ¶¶ 103-19; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, FAC ¶¶ 120-27; (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, FAC ¶¶ 128-40; and (4) unjust enrichment, FAC ¶¶ 141-46. Forrett seeks to represent a class of all

1  citizens of California who purchased the product within the relevant statute of limitations periods.
2  *Id.* ¶ 94.

## II. FAILURE TO STATE A CLAIM – RULE 12(B)(6)

### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B. Plaintiff's Theory of the Case

Gourmet Nut argues that the case should be dismissed with prejudice.  *See* MTD.  The Court previously addressed and dismissed Forrett's claims about the "PROTEIN PACKED" language.  *See Forrett*, 2022 WL 6768217.  The Court determined that the "PROTEIN PACKED" language was not misleading to a reasonable consumer.  *Id.* at *2-3.  In amending the Complaint, Forrett has changed the theory of the case.  Forrett now focuses on protein quality, as opposed to protein quantity.  *See* Opp. at 1-2; FAC ¶¶ 31-40.  Forrett asserts that it is misleading for

1  Defendant to make a nutrient content claim but to omit the Percent Daily Value, a figure that
2  accounts for protein quality, on the packaging.  FAC ¶ 11.  Plaintiff alleges that Gourmet Nut's
3  omission of the PDV for protein allows it to "mislead and deceive consumers that the Products are
4  excellent sources of protein," despite the types of proteins in the product being "incomplete
5  proteins."  *Id.* ¶¶ 44, 54.

6  The Court will focus on Plaintiff's new theory for this Order.

### C. Preemption

Gourmet Nut argues that the case must be dismissed because Plaintiff's claims are preempted by the Federal Food, Drug and Cosmetic Act of 1938 ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA").  MTD at 5-6.  The Ninth Circuit has recently discussed the federal regulatory regime for food product labeling in the context of preemption.  *See Pardini v. Unilever United States, Inc.*, 65 F.4th 1081 (9th Cir. 2023); *Hollins v. Walmart Inc.*, --- F.4th ---, 2023 WL 3364616 (9th Cir. May 11, 2023).  While these cases were decided after the briefing on the motion to dismiss, they provide useful summaries of the preexisting law on the FDCA and preemption, which the Court will point to here.

The FDCA establishes rules governing food product labeling, including nutritional information.  *See* 21 U.S.C. § 301 *et seq.*  "As amended by the Nutrition Labeling and Education Act, the FDCA generally guarantees uniform food labeling nationwide by expressly prohibiting states from 'directly or indirectly' establishing 'any requirement for [the] nutrition labeling of food that is not identical' to federal requirements."  *Pardini*, 65 F.4th at 1084 (alteration in original) (quoting 21 U.S.C. § 343-1(a)(4)); *see also Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664-65 (9th Cir. 2014).  The United States Food and Drug Administration ("FDA") "has interpreted the FDCA to prohibit 'any statute, standard, regulation, or other requirement . . . issued by a State' that 'directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food' additional to or different from 'those specifically imposed by or contained in the applicable provision (including any implementing regulation)' of the FDCA."  *Pardini*, 65 F.4th at 1084 (quoting 21 C.F.R. § 100.1(b)(5), (c)(4)(ii)).  "It is well established that the FDCA's preemption provision can preempt state law statutory and common law causes of action, like the

4

1  ones plaintiffs assert here, to the extent those claims would directly or indirectly impose nutrition
2  label requirements different than those prescribed by federal law." *Id.* at 1084-85 (citing *Riegel v.*
3  *Medtronic, Inc.*, 552 U.S. 312, 324 (2008)).
4      "The FDA has implemented the FDCA's nutrition labeling requirements in voluminous
5  regulations." *Pardini*, 65 F.4th 1085. The regulations govern "[t]he declaration of nutrition
6  information on the label and in the labeling of a food" as to protein. *See* 21 C.F.R. § 101.9(c)(7).
7  The regulations provide that the "corrected amount of protein (gram) per serving" for foods that
8  are for adults and children at least one year old "is equal to the actual amount of protein (gram) per
9  serving multiplied by the amino acid score corrected for protein digestibility." *Id.* §
10 101.9(c)(7)(ii). The protein digestibility-corrected amino acid score must be determined by
11 methods identified in the regulation. *Id.* A statement of the corrected amount of protein per
12 serving, calculated as a percentage of the Daily Reference Value (DRV) and expressed as a
13 Percent of Daily Value (PDV) must be provided on the label "if a protein claim is made for the
14 product." *Id.* § 101.9(c)(7)(i); *see Rausch v. Flatout, Inc.*, No. 22-cv-04157-VC, 2023 WL
15 2401452, at *1 (N.D. Cal. Mar. 8, 2023) ("But if a product makes a 'protein claim' anywhere else
16 on its label—for instance, 'Excellent source of protein!' or even just '20g of protein'—the FDA
17 requires the manufacturer to include additional information on the nutrition facts panel: The
18 manufacturer can still list the grams of protein unadjusted for the protein's quality, but they must
19 also include the 'corrected amount of protein per serving,' expressed as a percent of daily value.").
20 When the PDV is provided, "it should be placed on the label adjacent to the statement of grams of
21 protein and aligned under the column headed 'Percent Daily Value,' and expressed to the nearest
22 whole percent." 21 C.F.R. § 101.9(c)(7)(i). For purposes of calculating the PDV, the Daily
23 Reference Value for protein for adults and children four or more years old is 50 grams. *Id.* §
24 101.9(c)(7)(iii).
25     Gourmet Nut argues that Forrett's claims are preempted because Forrett seeks to impose
26 requirements different from what is required under the FDCA. MTD at 5-6. As stated above, "[i]t
27 is well established that the FDCA's preemption provision can preempt state law statutory and
28 common law causes of action . . . to the extent those claims would directly or indirectly impose

nutrition label requirements different than those prescribed by federal law." *Pardini*, 65 F.4th at 1084-85 (citing *Riegel*, 552 U.S. at 324). The Court must decide whether requiring Gourmet Nut to include the PDV of protein, as Forrett seeks, would constitute the imposition of a nutrition labeling requirement different than what is prescribed by federal regulation.

The Court looks to the regulations. The FDA regulation requires that the PDV for protein be included "if a protein claim is made for the product." 21 C.F.R. § 101.9(c)(7)(i); *see also* 21 C.F.R. § 101.13(n) ("Nutrition labeling in accordance with § 101.9 . . . shall be provided for any food for which a nutrient content claim is made."). The question thus becomes whether Gourmet Nut has made a nutrient content claim for protein. Nutrient content claims are also addressed by regulation. *See* 21 C.F.R. § 101.13. The applicable regulation provides as follows:

> (b) A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation . . . .
>
> (1) An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., "low sodium" or "contains 100 calories."
>
> (2) An implied nutrient content claim is any claim that:
>
> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or
>
> (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat").
>
> (3) Except for claims regarding vitamins and minerals described in paragraph (q)(3) of this section, no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age unless the claim is specifically provided for in parts 101, 105, or 107 of this chapter.
>
> (4) Reasonable variations in the spelling of the terms defined in part 101 and their synonyms are permitted provided these variations are not misleading (e.g., "hi" or "lo").
>
> (5) For dietary supplements, claims for calories, fat, saturated fat, and cholesterol may not be made on products that meet the criteria in § 101.60(b)(1) or (b)(2) for "calorie free" or "low calorie" claims, except, in the case of calorie claims, when an equivalent

>amount of a similar dietary supplement (e.g., another protein supplement) that the labeled food resembles and for which it substitutes, normally exceeds the definition for "low calorie" in § 101.60(b)(2).

21 C.F.R. § 101.13(b). The Court notes that there is another regulatory provision, 21 C.F.R. § 101.54, that imposes certain requirements for a *subset* of nutrient content claims—those using the words "high," "rich in," "excellent source of," "good source," "contains," or "provides." 21 C.F.R. § 101.54(b)-(c). Products that make these nutrient content claims are subject to *additional* regulations, which are laid out in 21 C.F.R. § 101.54.[1] But the requirements of 21 C.F.R. § 101.9(c)(7), including the requirement to include a Percent Daily Value of protein, applies to products that make *any* nutrient content claim, as that term is defined in 21 C.F.R. § 101.13, *not only* those nutrient content claims that are identified in 21 C.F.R. § 101.54(b)-(c).

Forrett argues that "protein packed" is a nutrient content claim. Opp. at 3-6. He argues that terms not explicitly defined by the FDA in regulation, but that are synonyms of those terms, can qualify as nutrient content claims for purposes of triggering other FDA regulations, such as § 101.9. Opp. at 8. Forrett argues that "packed" is such a synonym and that "protein packed" qualifies as a nutrient content claim. *Id.* Forrett points the Court to several cases in support of his argument. *See Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015); *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318-KJM-EFB, 2015 WL 75223 (N.D. Cal. Jan. 6, 2015); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100 (N.D. Cal. 2013); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013). In these cases, the courts all determined that words other than those identified in the regulations constituted nutrient content claims. *Vassigh*, 2015 WL 4238886, at *6-7; *Salazar*, 2015 WL 75223, at *4-5; *Gustavson*, 961 F. Supp. 2d at 1121-22; *Clancy*, 308 F.R.D. at 575; *Lanovaz*, 2013 WL 675929, at *5. In several of these cases, the courts determined that "packed" or "packed with" constituted a

---

[1] For example, products that use the specified terms must include at least certain amounts of the relevant nutrient. *See* 21 C.F.R. § 101.54(b)-(c). As the Court stated in the previous Order, because the Product does not include any of these terms—"rich in," "excellent source of," "good source," "contains," or "provides"—the Product need not include a certain amount of protein, as identified in 21 C.F.R. § 101.54(b)-(c). *Forrett*, 2022 WL 6768217, at *3.

7

nutrient content claim based on FDA warning letters. *See Vassigh*, 2015 WL 4238886, at *6-7; *Salazar*, 2015 WL 75223, at *4-5. In *Vassigh*, the court recognized that the plaintiff had "submitted FDA letters warning companies that statements characterizing their products as 'high,' 'powerful,' 'rich,' 'abundantly found,' 'fortified,' and 'packed with' antioxidants constitute nutrient content claims." 2015 WL 4238886, at *7. The court ultimately found that "the statements that the Bai5 Antioxidant Infusions beverages are 'Antioxidant Packed' or are an 'Antioxidant Packed Beverage'—which plausibly imply a particular level of antioxidants contained in the product—constitute sufficient nutrient content claims and are thus sufficient to survive Bai's motion to dismiss." *Id.* In *Salazar*, the court determined that "the phrase 'our organic green tea is packed with [Epigallocatechin gallate],' also is likely to qualify as a nutrient content claim." 2015 WL 75223, at *5. The court relied on an FDA warning letter stating that "The term 'packed with' characterizes the level of flavonoid antioxidants in the product." *Id.*

Defendant argues that these cases are distinguishable because they are specific to antioxidants. *See* Reply at 12-13. Defendant asserts that, in these cases, the courts pointed to FDA Warning Letters that indicated that the identified language, while not spelled out in regulation, constituted a nutrient claim. *Id.*; *see, e.g.*, *Vassigh*, 2015 WL 4238886, at *6-7; *Salazar*, 2015 WL 75223, at *4-5; *Gustavson*, 961 F. Supp. 2d at 1121-22; *Clancy*, 308 F.R.D. at 575; *Lanovaz*, 2013 WL 675929, at *5. Further, Defendant argues, all of these cases involved antioxidants, which are regulated by a specific regulation that is not applicable to protein claims. Reply at 12-13; *see* 21 C.F.R. § 101.54(g).

Upon close inspection of the regulations, the Court disagrees with Defendant. The FDA regulation requires that the PDV for protein be included "if a protein claim is made for the product." 21 C.F.R. § 101.9(c)(7)(i). The regulations provide that a nutrient content claim is a "claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36." 21 C.F.R. § 101.13(b). Further, "[a]n expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). The antioxidant-specific regulation states "[a] nutrient content claim that characterizes the level of antioxidant nutrients present in a food may be used on

8

the label or in the labeling when [certain conditions are met]." 21 C.F.R. § 101.54(g). While this regulation is specific to antioxidants, the language is the same as the regulations for nutrient content claims generally. The definition of an antioxidant nutrient content claim—a "claim that characterizes the level of antioxidant nutrients present in a food"—is the same as that for a nutrient content claim for other nutrients—a "claim that expressly or implicitly characterizes the level of a nutrient." *Compare* 21 C.F.R. § 101.54(g) *with* 21 C.F.R. § 101.13(b). Courts have determined that "packed" and "packed with" constitute a "claim that characterizes the level of antioxidant nutrients present in a food" under § 101.54(g). *See Vassigh*, 2015 WL 4238886, at *6-7; *Salazar*, 2015 WL 75223, at *4-5. The Court therefore determines that "Protein Packed" is a nutrient content claim that characterizes the level of protein in the food and that triggers the requirements of 21 C.F.R. § 101.9(c)(7). Therefore, Plaintiff's claim that the omission of the Percent Daily Value of protein was misleading is not preempted.

### D.   Counts 1-3:  UCL, FAL, CLRA

#### 1.   Rule 9(b)

When a party pleads a cause of action for fraud or mistake, it is subject to the heightened pleading requirements of Rule 9(b). "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires that the circumstances constituting any alleged fraud be pled "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magree v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Claims of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct alleged. *Id.* If a "claim is said to be 'grounded in fraud' or to 'sound to fraud,' [then] the pleading of that claim as a whole must satisfy that particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

The applicability of Rule 9(b) hinges not on the elements of the claim but rather on the

9

nature of the allegations themselves: "Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court," including "particular averments of fraud" even when fraud is not an essential element of the claim. *Vess*, 317 F.3d at 1103; *see also Kearns*, 567 F.3d at 1124 ("Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard."). Fraud can thus be averred "by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess*, 317 F.3d at 1105 (citations omitted).

### 2. Reasonable Consumer Standard

Plaintiff brings three fraud-based claims: (1) violation of the fraud prong of the UCL, (2) violation of the FAL, and (3) violation of the CLRA. FAC ¶¶ 103-40. These claims are governed by the "reasonable consumer" test. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (applying the reasonable consumer test to FAL, CLRA, and UCL claims). The reasonable consumer test requires Plaintiff show that "members of the public are likely to be deceived" by Defendant's conduct. *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Defendant argues that there are no misleading statements likely to deceive a reasonable consumer. MTD at 9-14. The Court already determined that the "Protein Packed" language itself is not misleading to a reasonable consumer. *See Forrett*, 2022 WL 6768217, at *2-3. The Court will address Plaintiff's new theory—whether the omission of the PDV is misleading. *See* Opp. at 12-15.

Gourmet Nut argues that omission of the PDV is not likely to mislead a reasonable consumer. MTD at 13-14; *see also* Reply at 6-8. To allege fraud by omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)). Forrett argues that both are the case here—that the omission of the PDV is deceptive because it is contrary to the "Protein Packed" representation and it was a fact that Gourmet Nut was obligated to disclose. Opp. at 12-15. The Court will address each in turn.

10

          a. Contrary to a Representation

Gourmet Nut argues that the omission of the PDV is not contrary to any representation made on the product. Reply at 7. Forrett argues that it is contrary to the "Protein Packed" language. Opp. at 12-13. The Court agrees with Gourmet Nut. Forrett has not alleged facts indicating that a statement of the PDV of protein would be contrary to the "Protein Packed" language. As the Court stated in its previous Order, "'packed' does not have a defined meaning with regards to nutrient content." *Forrett*, 2022 WL 6768217, at *3. If "Protein Packed" does not have a defined meaning, then the PDV of protein could not be contrary to it. The Court therefore determines that the omission of the PDV is not actionable as contrary to the "Protein Packed" representation.

          b. Obligated to Disclose

The Court next turns to the question of whether Gourmet Nut was obligated to disclose the PDV of protein. Gourmet Nut asserts that it was not required to disclose the PDV of protein because it was not material. Reply at 7-8. Forrett acknowledges that the duty not to mislead consumers does not stem from the FDCA, but his argument that Gourmet Nut was required to disclose the PDV focuses on the fact that Gourmet Nut was required to include the PDV under FDA regulations. Opp. at 13-15.

The law about a defendant's duty to disclose in fraudulent omission cases is "marked by general disarray," largely because there are at least two tests to determine whether a defendant has a duty to disclose. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101-02 (N.D. Cal. 2021)). The Court agrees with the recent *Hammerling* decision as to the appropriate test. *See id.* (collecting Ninth Circuit and Northern District of California cases adopting this test). Forrett must allege that Gourmet Nut's omission "either (1) relates to an unreasonable safety hazard or (2) is material, 'central to the product's function,' and meets one of the four *LiMandri* factors." *Id.* at 1086 (quoting *Hodson*, 891 F.3d at 863). Here, the first clearly does not apply. "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively

1   conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but
2   also suppresses some material facts." *Id.* at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th
3   326, 336 (1997)).

4       Gourmet Nut argues that the PDV was not material because a reasonable consumer would
5   not deem the PDV important in making a decision about whether to purchase the product. Reply
6   at 7-8. The Court disagrees. In a product with prominent information about protein, the Court
7   determines that it is at least plausible that a reasonable consumer would consider the PDV to be
8   material. The fact that the FDA requires the PDV to be included on products that make nutrient
9   content claims suggests that consumers would care about this information in deciding whether to
10  purchase a product. *Cf. Nacarino v. Kashi Co.*, 584 F. Supp. 3d 806, 810 (N.D. Cal. 2022),
11  *abrogated on other grounds by Rausch*, 2023 WL 2401452 ("A better reading is that the FDA
12  recognizes that in situations where consumers are drawn to a product for its protein content—those
13  situations in which a manufacturer is touting its product's protein on its packaging—consumers
14  deserve additional information in the Nutrition Facts label. This is not to remedy an otherwise
15  misleading figure, but to supply protein-conscious consumers with information that gives them
16  further assistance in deciding what to buy.").

17      Plaintiff asserts that Gourmet Nut had exclusive knowledge of the PDV. Opp. at 12-13.
18  Defendant does not argue otherwise. And the Court agrees. Under the regulations, a PDV is
19  calculated as a percentage of the RDI or DRV using the corrected amount of protein. 21 C.F.R. §
20  101.9(c)(7)(i). The "corrected amount of protein (gram) per serving" for foods that are for adults
21  and children at least one year old "is equal to the actual amount of protein (gram) per serving
22  multiplied by the amino acid score corrected for protein digestibility." *Id.* § 101.9(c)(7)(ii). The
23  protein digestibility-corrected amino acid score must be determined by methods identified in the
24  regulation. *Id.* A consumer would not have the information necessary to calculate the protein
25  digestibility-corrected amino acid score, or in turn to calculate the DRV.

26      The Court notes that, as explained in *Hammerling*, under *Hodsdon*, a party must also show
27  that the omission is central to the product's function. *See Hodsdon*, 891 F.3d at 863. But
28  Gourmet Nut does not argue that the omission is not central to the product's function. *See* MTD;

12

1  Reply. The Court will therefore not address this prong.

2  Plaintiff's has adequately alleged the UCL, FAL, and CLRA claims. *Cf. Rausch*, 2023 WL 2401452, at *6 ("[Plaintiff] has plausibly alleged that [Defendant's] labels fail to comply with the FDA's regulations, and so []he can bring state law claims based on that noncompliance.").

### E. Unjust Enrichment

Gourmet Nut argues that the claim for unjust enrichment must be dismissed for failure to state a claim because it is not tied to any other claim. MTD at 14. Forrett argues that, under California law, a standalone claim for unjust enrichment is allowed. Opp. at 16-17.

As the Ninth Circuit stated last year, "[u]njust enrichment can be alleged to the extent it represents a remedy for some other valid cause of action." *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022). Plaintiff again fails to tie his unjust enrichment claim to any other cause of action. *See* FAC. The Court therefore DISMISSES Plaintiff's claim for unjust enrichment. Because Plaintiff has already been given the opportunity to amend on this basis, the dismissal is WITHOUT LEAVE TO AMEND.

### III. ARTICLE III STANDING – RULE 12(B)(1)

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "A plaintiff bears the burden of demonstrating that her injury-in-fact is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956 (9th Cir. 2018) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)); *see also Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990))). Gourmet Nut argues that Forrett lacks standing to pursue injunctive relief.

13

MTD at 14-17.

The Ninth Circuit addressed the availability of injunctive relief to a previously deceived consumer who brings a false advertising claim in *Davidson*. *See* 889 F.3d 956. In that case, the plaintiff alleged that the product, Scott Wipes that were labeled as "flushable," were not in fact flushable. *Id.* at 961-62. The Ninth Circuit recognized it was "an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 967. The court held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The court identified two examples of threatened future harm. "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70. "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. The court thus indicated it was "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Id.* (emphasis in original) (quoting *Duran v. Creek*, No. 3:15-cv-05497-LB, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016)). The court ultimately determined that the plaintiff in that case had standing to seek injunctive relief. *Davidson*, 889 F.3d at 971-72.

Here, Plaintiff alleges that he would purchase the Products if "reformulated to ensure they provide, in a usable form, the amounts of quality protein that are represented on the labels, or their labels are changed to provide non-misleading information." FAC ¶ 17. Forrett would like to buy the Product again if it includes the omitted PDV. This allegation is sufficient to allege standing under *Davidson*. Plaintiff therefore has standing to seek injunctive relief.

## IV. EQUITABLE JURISDICTION

Even if a district court has subject matter jurisdiction, "[t]here remains the question of equitable jurisdiction." *Schlesinger v. Councilman*, 420 U.S. 738, 753-54 (1975). Both are required for a federal court to hear the merits of an equitable claim. *Guzman v. Polaris Indus. Inc.*, No. 21-55520, 2022 WL 4543709, at *5 (9th Cir. Sept. 29, 2022). "Subject matter jurisdiction regards 'whether the claim falls within the limited jurisdiction conferred on the federal courts' by Congress, while equitable jurisdiction regards 'whether consistently with the principles governing equitable relief the court may exercise its remedial powers.'" *Id.* (quoting *Schlesinger*, 420 U.S. at 754). For a district court to have equitable jurisdiction, and thus entertain a request for equitable relief, the plaintiff must have no adequate legal remedy. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

A plaintiff cannot state a claim for equitable relief "if the pleading does not demonstrate the inadequacy of a legal remedy." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021). Under *Sonner*, a plaintiff must allege the lack of an adequate legal remedy to assert a claim for equitable relief. *See* 971 F.3d at 844. Forrett has done so here. *See* FAC ¶¶ 119, 127, 146.

The Court has equitable jurisdiction over the UCL, FAL, and unjust enrichment claims.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Gourmet Nut's motion to dismiss is:

1. DENIED as to the UCL, FAL, and CLRA claims for failure to state a claim;

2. GRANTED WITHOUT LEAVE TO AMEND as to the unjust enrichment claim for failure to state a claim;

3. DENIED as to lack of standing; and

4. DENIED as to lack of equitable jurisdiction.

Dated: June 1, 2023

_____
BETH LABSON FREEMAN
United States District Judge